**In re: FLORIDA C.A.R.D.S., INC., Shore Travel, Inc., Debtors.**

**Bankruptcy Nos. 92–7209–8P7, 92–7208–8P7.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Feb. 18, 1993.

**960**

Terry E. Smith, Tampa, FL, trustee.

Allan C. Watkins, Tampa, FL, for trustee.

Thomas C. Little, Clearwater, FL, for debtor.

Robert Soriano, Tampa, FL, for First Interstate Bank.

Charles Tatelbaum, Tampa, FL, for National Bank of Royal Oak.

## ORDER ON MOTION TO COMPEL COMPLIANCE AND RENEWED MOTION FOR AUTHORITY TO PAY CONSUMER CLAIMS

ALEXANDER L. PASKAY, Chief Judge.

THESE are converted Chapter 7 liquidation cases and the matters before the Court are as follows: (1) a Motion to Compel National Bank of Royal Oak to Comply with 11 U.S.C. § 345(b) filed by the Office of U.S. Trustee; (2) a Renewed Motion for Authority to Pay Consumer Claims from Reserve Account filed by National Bank of Royal Oak; and (3) a Motion for Rehearing of the Order on Motion for Authority to Pay Consumer Claims from Reserve Account filed by First Interstate Bank of Arizona. All three motions relate to funds held in two bank accounts totalling approximately $736,451.63. The facts relevant to resolution of these controversies, as established by the record and argued at the duly noticed hearing, are as follows.

Florida C.A.R.D.S. and Shore Travel (Debtors) originally filed their Petitions for Relief under Chapter 11 of the Bankruptcy Code on May 27, 1992. The Debtors were involved in selling travel packages to the public through a telemarketing program. The Debtors were authorized to operate their businesses as Debtors–in–Possession by Order dated June 5, 1992. As part of the business operation, the Debtors maintained Visa and Mastercard accounts through Merchant Agreements (Agreement) with the National Bank of Royal Oak (Royal Oak). The Agreement provided for the establishment and maintenance of a reserve account (Reserve Account). Twenty-five (25) percent of all credit card vouchers presented to Royal Oak were held in the Reserve Account under the name Florida C.A.R.D.S., Inc. d/b/a Shore Travel, Inc.

On May 14, 1992, prior to the commencement of this case, the Department of Legal Affairs, State of Florida, obtained an Order Granting Temporary Injunction Without Notice by the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida, enjoining the Debtors from continuing to operate their respective busi-

nesses. On May 20, 1992, the Circuit Court entered a Stipulated Temporary Injunction which allowed the Debtors to resume operations under certain terms and conditions. One of the conditions required the Debtors to establish an interest-bearing account at the National Bank of Royal Oak in the amount of $150,000 and to designate Joseph Perlman, Esquire, as trustee, and the sole signatory on the account. These funds were to be used for the benefit of Debtors' customers who had not received the travel and hotel services for which they had paid in full.

The Bank transferred the funds held in the Reserve Account into two separate accounts. The sum of $150,000.00 was placed into an account titled "Office of Attorney General, J. Perlman" (Perlman Account). The balance of the funds was placed into an account titled "NBRO Contingent Liability" (NBRO Account).

On July 1, 1992, Royal Bank filed a Motion for Authority to Pay Consumer Claims from Reserve Account. In due course, the matter was heard before this Court, and this Court entered an Order on August 26, 1992, granting the Motion with the proviso that Royal Oak submit a schedule of chargebacks to the Debtor in order that the Debtor may determine which of the chargebacks were disputed. The Order provided that if the Debtor did not file an objection to a chargeback within twenty days after service of the scheduled chargeback, Royal Oak would be authorized to use the funds in the two reserve accounts to the chargeback.

Thereafter, Royal Oak complied with the August 26, 1992, Order and submitted a schedule of the claimed chargebacks. The Debtor filed a Response to the schedule of chargebacks, but did not set forth specific chargebacks to which the Debtor objected. On August 31, 1992, shortly after the entry of the Order, this Court converted these cases to Chapter 7 cases, upon the Motion of the U.S. Trustee. At this time, Royal Oak had not paid any of the chargebacks from the reserve account, and as of July 31, 1992, the two reserve accounts contained $585,633.29. According to Royal Oak, chargeback demands made on Royal Oak exceed $1.2 million.

Based upon these facts, the U.S. Trustee has filed a Motion to Compel Royal Oak to Comply with § 345(b) of the Bankruptcy Code. In addition, Royal Oak has filed a Renewed Motion for Authority to Pay Consumer Claims from the Reserve Account, and First Interstate of Arizona has filed a Motion for Reconsideration of the August 26, 1992, Order granting Royal Oak the authority to pay the chargeback demands.

Taking the Motions in turn, the Trustee's Motion contends that the money held in the reserve accounts is property of the estate, and as such must be protected pursuant to § 345(b) of the Bankruptcy Code by the posting of a bond by Royal Oak. Section 345(b) of the Bankruptcy Code provides, in pertinent part, as follows:

§ 345. Money of estates

(a) A trustee in a case under this title may make such deposit or investment of the money of the estate for which such trustee serves as will yield maximum reasonable net return on such money, taking into account the safety of such deposit or investment.

(b) Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested—

(1) a bond—

(A) in favor of the United States;

(B) secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and

(C) conditioned on—

(i) a proper accounting for all money so deposited or invested and for any return on such money;

(ii) prompt repayment of such money and return; and

(iii) faithful performance of duties as a depository; or

(2) the deposit of securities of the kind specified in section 933 of title 31.

■ Section 345 provides protection for monies which are held by the Trustee of an estate, and which are deposited by the Trustee in a bank account, or invested for a return. It is clear § 345 was not intended to apply to monies held by a bank in a bank account which is not titled in the Debtor's name. Since the accounts are not titled in the Debtors' name, but instead, "NBRO Contingent Liability," and "Office of Attorney General, J. Perlman, Trustee," and this Court has already preliminarily approved Royal Oak's ability to pay consumer claims out of the reserve funds, this Court is satisfied that Royal Oak is not required to post a security for the funds held in the reserve accounts. This leaves for consideration Royal Oak's Renewed Motion to Pay Consumer Claims.

■ As noted above, this Court's Order of August 26, 1992, set forth a procedure which allowed the Debtors' to dispute the validity of chargebacks received by Royal Oak. Royal Oak could not pay consumer claims which the Debtors disputed. On August 27, 1992, the Debtors' filed a response setting forth objections to Royal Oak's Schedule of Chargebacks. This response does not indicate specific chargebacks to which the Debtors have an objection. On October 5, 1992, Royal Oak filed a Supplemental Schedule of Chargebacks. No response has been filed to this Supplement. In view of the nonspecific response filed by the Debtors, and the failure by the Chapter 7 Trustee to object to any of the chargebacks listed on the Supplemental Schedule, this Court is satisfied that it is appropriate to authorize Royal Oak to pay all valid chargeback claims from the funds held. Inasmuch as the funds which were placed in the Perlman account by the State Attorney were reserved to pay *all* claimants, this Court is satisfied that Royal Oak may pay all valid chargeback claims from the funds held in the NBRO account on a prorata basis. Such payment must be made in compliance with nonbankruptcy consumer protection statutes, including the Uniform Consumer Credit Code.

Finally, First Interstate Bank of Arizona filed a Motion for Reconsideration of this Court's Order authorizing Royal Oak to pay consumer claims from the reserve account. Inasmuch as this Court's order was entered on August 26, 1992, and the Motion for Reconsideration was filed on September 8, 1992, this Court is satisfied that the Motion for Reconsideration was filed outside of the ten day period provided by the Bankruptcy Rules, and is untimely. Therefore, the Motion should be denied.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion to Compel National Bank of Royal Oak to Comply with 11 U.S.C. § 345(b) filed by the Office of U.S. Trustee is hereby denied. It is further

ORDERED, ADJUDGED AND DECREED that the Renewed Motion for Authority to Pay Consumer Claims from Reserve Account filed by National Bank of Royal Oak is hereby granted, and Royal Oak is authorized to pay all valid claims with the funds held in the NBRO Contingent Liability account in the manner set forth above. It is further

ORDERED, ADJUDGED AND DECREED that the Motion for Rehearing of the Order on Motion for Authority to Pay Consumer Claims from Reserve Account filed by First Interstate Bank of Arizona is hereby denied.

DONE AND ORDERED.